UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ABENI BLOODWORTH,

                              Plaintiff,

             - against -

NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
and DERRICK JOHNSON,

                             Defendants.
------------------------------------------------------------------X

Civil Action. No. 7:18-cv-9227

**COMPLAINT**

**JURY TRIAL DEMAND**

## NATURE OF THE ACTION

This is an action under the Family Medical Leave Act of 1993 to correct unlawful employment practices in failing to provide appropriate medical leave and reinstatement to plaintiff Abeni Bloodworth. As charged with greater particularity below, defendants National Association for the Advancement of Colored People ("NAACP"), and its President Derrick Johnson violated the FMLA by failing to reinstate Bloodworth to her position as the Interim Chief Development Officer, after she needed to take a short disability leave of less than a month. Accordingly, this civil rights employer and its President, violated the federal statute on the provision of leave and safeguarding employment for a short period of disability.

## JURY DEMAND

1. Plaintiff Abeni Bloodworth demands a trial by jury of all issues in this action.

## JURISDICTION, PARTIES AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to the Family and Medical Leave Act of 1993 (collectively "the FMLA"), 29 U.S.C. §2601 *et. seq*.

1

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of New York.

4. Plaintiff Abeni Bloodworth ("Bloodworth") resides in Brooklyn, New York, Kings County.

5. At all relevant times, defendant NAACP has continuously operated as an employer as defined under the FMLA, with more than fifty employees, and is a covered employer under the FMLA, as it has continuously employed at least 50 employees.

6. At all relevant times, defendant Derrick Johnson ("Johnson") was President of defendant NAACP and "acted, directly or indirectly, in the interest" of the employer NAACP. FMLA, 29 U.S.C. §2611 (4)(A)(ii)(I). Accordingly, he is a proper defendant under the FMLA.

7. Both defendants NAAACP and President Derrick Johnson regularly conduct their business in Manhattan, New York County.

8. This Court has jurisdiction over this action pursuant to the FMLA, 29 U.S.C. §2617, and 28 U.S.C. §1331, as this case arises under the laws of the United States, in particular the FMLA, 29 U.S.C. §2617(a). 29 U.S.C. §2617(a)(2) confers jurisdiction to redress any violation and bring this civil action for damages in the federal court.

9. Venue is appropriate here, because the events about which plaintiff complains occurred where defendant NAACP regularly conducts its business in Manhattan, New York, in New York County. This is the appropriate federal court location for actions that arise from acts in Manhattan.

## **FACTS**

10. Plaintiff Abeni Bloodworth ("Bloodworth") began her employment on or about February 14, 2017 as the Director of Foundation Relations for Respondent National

2

Association for the Advancement of Colored People ("the NAACP" or "Respondent"). At the start of January 2018, the NAACP's President, promoted her to the position of Chief Development Officer, on an interim basis. In the Chief Development Officer ("CDO") role, she supervised seven other individuals in the Development Department.

11. Effective immediately at the time of promotion, Bloodworth received a substantial increase to her annual salary, an increase in the amount of $42,000 per year.

12. Before and after the promotion, Bloodworth had received from Defendant President Derrick Johnson and the NAACP excellent performance evaluations. She had also been verbally complimented by Johnson and others on the performance of her job duties since her promotion to the CDO position.

13. On or about May 27, 2018, Bloodworth became sick during a business trip, and was hospitalized for two nights in Atlanta, Georgia. She had experienced a blood clot in her lung, which was dangerous. Bloodworth then rested for several weeks at home while being advised by her physician not to work for a short period.

14. Bloodworth completed an application for FMLA leave with defendant, and such leave was approved. She also provided medical information from a physician as required.

15. Bloodworth returned to work on June 27, 2018 – one month after starting her FMLA leave period. On that same day, Johnson and Human Resources told Bloodworth that the NAACP was removing her from her position as the interim CDO, and she would revert to the previously held Director position -- at the much lower annual salary. She provided additional medical information from her physician as required at the time of her return to work.

16. At a meeting two days later, Johnson announced that he had removed

Bloodworth from the position as the CDO because of Bloodworth's "health challenges." For the first time, Bloodworth now learned this in a public forum in front of her former staff that had reported to her, up until that day. Johnson informed the staff that he himself would now act as the CDO on a temporary basis, and that the staff should report to him. In referring to Bloodworth's health challenges, Johnson implied that Bloodworth had been removed from the CDO position, in some part, because she took her leave period under the FMLA.

17. In removing Bloodworth from her position after she returned from her leave, and in refusing to permit her to return to her equivalent position with the same pay, responsibilities, and terms and conditions, Johnson acted on behalf of defendant NAACP.

18. Bloodworth made a lawful and valid claim for leave under the Family and Medical Leave Act. Nevertheless, defendant NAACP violated the Act when it failed to return her to the comparable or similar position that she held before having taken the lawful and short leave period. Under the Act, at "the conclusion of the FMLA leave, the employer must restore the employee to the employee's same position, or to an equivalent position with equivalent benefits, pay and other terms and conditions." 29 CFR §825.305. 29 U.S.C. §2614 (a) (1)(A) states that an employee "shall be entitled, on return from such leave….to be restored by the employer to the position of employment held by the employee when the leave commenced." In the alternative, §2614 (a)(1)(B) requires that the employee be "restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."

19. Notwithstanding these provisions, defendants did not restore Bloodworth to the position she held when the leave commenced, and they substantially diminished her pay by the amount of more than $40,000.

20. Defendants never investigated any actual concern that medical information or

facts to show that Bloodworth was unable to complete her job responsibilities because of her health condition. Under the FMLA, 29 U.S.C. §2613 (c)(1), (d)(1), if defendant had any such concerns, they could have required a second medical opinion at its own expense and engaged in an interactive process of reviewing the most current medical evidence. *See* 29 C.F.R. § 825.307(a)(2), (c) (2000). They never did so.

21. 29 U.S.C. §2615(a)(1) of the FMLA also prohibits defendants from interfering, retraining or denying the exercise of an employee's rights under the FMLA. Bloodworth exercised her rights under the Act by taking a short medical leave and submitting the required medical status information to defendant. Nevertheless, on Bloodworth's return to work with a valid medical release from her physician, defendants interfered with her exercise of her FMLA right to take a valid medical leave when they significantly reduced her salary, while demoting her to a substantially different job with substantially reduced duties, and substantially reduced reporting responsibilities - all amounting to a substantial change in the terms and conditions of her employment.

22. Defendants' acts in demoting Bloodworth, and refusing to permit her to return to her position as Interim CDO and at the applicable salary were willful violations of the FMLA.

23. Defendants actions violating the FMLA are particularly egregious in that her physicians informed her that her condition was predominantly caused by stress. In approximately May 2018, Johnson informed Bloodworth that the costs of the upcoming July 2018 NAACP convention would exceed its budget by one million dollars. Bloodworth had already met and even exceeded the convention budget in raising targeted funds of more than the $1.8 million budgeted.

24. Johnson instructed Bloodworth that she was to raise the additional $1 million

immediately in the next 30 days, so as to cover the costs of the convention, and raise that from donors by informing them of the "emergency" need for funds. Bloodworth informed Johnson that such was a very bad, and impractical, fund-raising process, as such would imply desperation and a lack of careful management to the regular donors. Bloodworth informed him that such would hurt long-term fundraising efforts, and would cause alarm amongst donors.

25. This 30-day deadline to exceed her budgeted fundraising goal by more than 50% created extreme stress for Bloodworth, greatly contributing to her health problems and resulting in a serious breathing disability and severe shortness of breath.

26. Around the same time in May 2018, Johnson also informed Bloodworth that the convention costs had routinely gone $1 million overbudget in the previous ten-year period. Johnson remonstrated Bloodworth that she should have known that she would need to raise a million dollars *more than the $1.8 budget target stated* in NAACP's budget document. This was news to Bloodworth, and distressing as an unworkable and faulty manner of conducting business and reliable communication, in addition to the stress of the new 30-day deadline.

27. In fact, after Bloodworth started her FMLA leave period at the end of May because of her serious health condition, Johnson told an outside development consultant that it was "interesting" that Bloodworth had experienced her health problems just as the convention loomed in July. Such adverse health effects and stress was not strange at all, given Johnson's creating a new 50% increased and last-minute budget target in order to pay for the convention. Telling Bloodworth that she should have known of significant over-budgeting as a ten-year practice also created significant confusion and stress for Bloodworth who had been working with agreed-upon and allegedly reliable written budgets.

28. Defendants furthered their retaliation against Bloodworth by terminating her

employment within a month of her return to her lower-level position. It was more than "interesting" to Johnson that Bloodworth had dared take a medical leave as the NAACP's annual conference approached: he sought to punish and discourage such exercise of FMLA and disability rights, even where Johnson himself had helped create significant health issues. On August 14. 2018, Johnson terminated Bloodworth's employment by letter, citing alleged performance deficiencies including alleged insubordination, failure to perform assigned duties, and unresponsiveness with defendant NAACP's executives.

29. Before her FMLA leave, defendants had not given her any warning or notice of performance deficiencies. In fact, defendants had only discussed plans and a timetable for discussing their *promotion* of Bloodworth to the CDO position on a permanent basis, and that timetable included more discussions about that in June 2018.

30. These unparticularized criticisms from the August 14, 2018 termination are only a composite pretext to mask defendants' retaliation. Regarding the recent events of July and August, such criticisms are glaringly non-sensical. One prime example: On a conference call during the week of August 6 shortly before the termination of her employment on August 14, Bloodworth informed Johnson and other executives on a telephone conference that United Parcel Service's gift foundation had just approved a $500,000 gift to NAACP's Youth Development program. Such showed Bloodworth's effective and successful recent performance, since she had had primary responsibility for submitting the grant application, and interactions with the UPS foundation's program manager. Citing to alleged performance problems where Bloodworth raised substantial grant revenue only a week earlier makes no sense.

31. Nevertheless, in discussing the UPS foundation's grant in early August 2018,

Johnson screamed at the group, upset that the amount could not clearly be used for the NAACP's "general" expenditures, which Johnson greatly preferred. Johnson ordered that the Senior Director for Corporate Relations be in charge of setting up a meeting with the UPS foundation to review this issue, even though contacts with and written submissions to foundations were part of Bloodworth's duties. Johnson also told the group that "I am the President of the NAACP, and I get to say who does what" and assign individuals to work as he sees best.

32. Bloodworth did not disagree: she addressed Johnson as "Mr. President" apologizing that "I was only trying to gain clarity about my role and responsibilities so that I can support the mission and goals of the NAACP."

33. Approximately one week later, Johnson fired Bloodworth, presumably citing this as alleged insubordination. It could not be insubordinate to address Johnson as "Mr. President" when most all other NAACP executives did so. It could not be insubordinate to affirm Johnson's power to alter assignments. Nor could it be insubordinate to remind the President that foundations handle giving in a different way than Corporations. These are non-sensical, and a pretext for retaliation.

34. Further, it was not insubordinate, but rather part of Bloodworth's responsibility, to assure that money is spent properly at the NAACP. One of her jobs was to check that money from NAACP's funds was spent from the appropriate sources, when funds were earmarked to be used for specific purposes: Bloodworth's duties included assuring that grant funds with specific purposes were not erroneously spent on general budget items.

35. On other occasions, Johnson had told Bloodworth that he wanted the freedom to use funds on "general" expenditures, regardless of their source.

36. Indeed, one of the main reasons that defendants promoted Bloodworth to the

Interim CDO position in the first place was to monitor the administration of grant funds awarded to the NAACP: the NAACP needed Bloodworth to assure that it was in appropriate compliance with the designated terms of spending on the projects for which it had received grants. For example, in 2016 and 2017, NAACP was carrying large "no cost extensions" to explain its lack of project and grants management and preparedness in spending grant funds. That situation needed correcting and monitoring by Bloodworth and whoever served as the CDO.

37. Indeed, in that same telephone conference during the week of August 6, another executive announced that the NAACP had received $167,000 from a group named OCWEN in order to use on a program for economic progress. One executive again explained to Johnson that the money was to be spent for that economic progress program, but Johnson explained that he wanted to decide where that money was to go and be spent.

38. Further, it is a pretext that Bloodworth was unresponsive with other executives while working remotely from Atlanta. Such is untrue, and Bloodworth can verify such with email records, phone and text records. Johnson had never informed Bloodworth in any way that she was difficult to reach.

39. In interfering with Bloodworth's exercise of her FMLA rights, defendants acted with malice and disregard for the law, and with an absence of good faith. As such, an award of liquidated damages is recoverable under the Act.

### CAUSE OF ACTION

40. Plaintiff repeats and realleges paragraphs 1 through 39 of this Complaint as if set forth herein.

41. Defendant intentionally violated the FMLA as alleged above, failed to assess

the essential duties of the Interim Chief Development Officer position or engage in the interactive process of assessing her medical condition using the most current available medical evidence.

42. Further, defendants NAACP and Johnson interfered with Bloodworth's FMLA rights and retaliated against Bloodworth for having requested and taken a leave under the FMLA, by first failing to return her to the same position as Interim Chief Development Officer, and by substantially lowering her annual salary.  They then furthered their retaliatory animus by terminating her employment -- making up pretextual and non-sensical reasons to mask their retaliation against her when she exercised her FMLA leave rights.

43. As such, defendants' actions harmed Bloodworth, such that it is liable to her for backpay, lost benefits, attorneys' fees, and liquidated damages, as well as reinstatement to her prior position.

**WHEREFORE**, Bloodworth demands judgment against Defendants as follows:

(a) on the Cause of Action, an award of statutory damages, including back pay and fringe benefits, and liquidated damages, the exact amount to be proven at trial; including, but not limited to, injunctive relief such as reinstatement to his prior position or front-pay, attorneys' fees, costs and disbursements incurred in connection with this action.

Dated: Goshen, New York
      October 9, 2018          FOULKE LAW FIRM

                   By:   *s/Michael Ranis, Esq.*
                   Michael Ranis, Esq. (MBR #3757)
                   *Attorneys for Plaintiff*
                   55 Main Street, 2nd Floor
                   Goshen, NY  10924
                   845-294-4308